UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - X

FREDERICK E. LANDRIGAN,                    :

                         Plaintiff,        :

            - against -                    :

LEO R. KAYTES, JR., LEO KAYTES FORD,       :
INC., P.O. RON DONNATIN, and THE TOWN
OF WARWICK,                                :

                         Defendants.       :

- - - - - - - - - - - - - - - - - - - X

07 Civ. 8669 (WCC)

**ECF CASE**

**OPINION**
<u>**AND ORDER**</u>

**A P P E A R A N C E S :**

FRANCIS D. PHILLIPS, II
DISTRICT ATTORNEY OF ORANGE COUNTY
**Attorneys for Non-party Orange
  County District Attorney**
Local Criminal Court Unit and
  Appeals Unit
18 Seward Avenue
Middletown, NY 10940

**ANDREW R. KASS**, **ESQ.**
**Senior Assistant District Attorney**

        Of Counsel

HODGES, WALSH & SLATER, LLP
**Attorneys for Defendant
  P.O. Ron Donnatin**
55 Church Street, Suite 211
White Plains, NY 10601

HAROLD L. MOROKNEK, ESQ.

        Of Counsel

**Copies Faxed to Counsel of Record and
Orange County District Attorney_____**

**Conner, Sr. D.J.:**

Plaintiff, Frederick E. Landrigan, brings this action under 42 U.S.C. § 1983 against defendants Leo R. Kaytes, Jr. ("Kaytes"), Leo Kaytes Ford, Inc. ("Kaytes Ford"), P.O. Ron Donnatin ("Donnatin") and the Town of Warwick (the "Town") alleging that defendants, acting under color of state law, violated his rights under the Fourth and Fourteenth Amendments of the United States Constitution. The Orange County District Attorney's Office, a non-party to this action, brought this motion to quash the subpoena issued upon it by defendant Donnatin. For the reasons stated below, the motion is denied.

## BACKGROUND

According to the Amended Complaint, plaintiff brought his car to Kaytes Ford for a replacement transmission. (Am. Complt. ¶ 9.) Shortly after the car was returned to plaintiff, he brought it back to Kaytes Ford because it was not running properly. (*Id*.) Katyes Ford informed him that the engine needed to be replaced, and a dispute arose between them as to whether this was caused by the improper removal and re-installation of the transmission and the failure of Kaytes Ford to heed recalls involving the timing chain. (*Id*. ¶ 10.) As a result of the dispute, plaintiff and Kaytes agreed to a discounted price to replace the engine. (*Id*. ¶ 11.) When plaintiff picked up the car, on February 26, 2007, he delivered a check to Kaytes Ford in payment for the services and believed that the repair was completed with new or factory re-manufactured parts. (*Id*.) The car stalled several times before plaintiff got home and he was barely able to make it back to Kaytes Ford. (*Id*. ¶ 12.) Upon inspection, it became apparent that Katyes Ford had used old parts from the replaced engine and other used parts and had failed to perform all the necessary pre-operation inspections on the car.

1

(*Id.*)  Plaintiff again left his car with Katyes Ford for repair but informed them of his complaints and that he was stopping payment on the check.  (*Id.* ¶¶ 13-14.)  Plaintiff attempted to resolve the dispute with Kaytes Ford, but was informed by Kaytes that Kaytes would not negotiate with plaintiff because Kaytes "had 'friends in the police department'" and all he "had to do was 'call one of [his] police buddies' and plaintiff would be 'arrested for a bad check.'"  (*Id.* ¶ 16 (alteration in original).)

Plaintiff alleges that Kaytes spoke to Police Officer Donnatin and that Kaytes and Donnatin conspired to have Donnatin threaten plaintiff with arrest, prosecution of criminal charges and public humiliation unless plaintiff abandoned the civil dispute with Katyes.  (*Id.* ¶¶ 17-18.)  In or about March or early April 2007, Donnatin contacted plaintiff and informed plaintiff that he would file charges against plaintiff if plaintiff did not pay Kaytes Ford in full.  (*Id.* ¶ 19.)  Plaintiff told Donnatin all of the above information about his dispute with Kaytes Ford and offered to provide Donnatin with confirming documents and additional information, but Donnatin did not accept plaintiff's offer, refused to conduct an investigation into the facts of the dispute and threatened plaintiff with arrest, prosecution and public humiliation.  (*Id.* ¶ 20.)  After one of the initial calls from Donnatin, plaintiff contacted the Orange County District Attorney's Office (the "DA's Office") in late March or early April 2007 to inform it of Donnatin's threat.  (*Id.* ¶ 23.)  Plaintiff alleges that the Assistant District Attorney ("ADA") he spoke to stated that he was unaware of any charges that were presented for review related to the incidents and that it sounded to him like a civil dispute.  (*Id.* ¶ 24.)

Plaintiff alleges upon information and belief that Donnatin later communicated with ADA Jamie Ferrara ("Ferrara"), who informed Donnatin that there were insufficient grounds to charge plaintiff with a crime or to arrest and prosecute him.  (*Id.* ¶ 25.)  Plaintiff alleges that after this

2

discussion, however, Donnatin contacted plaintiff on April 20, 2007 and told him to appear in the Warwick Town Police Department on Saturday April, 21, 2007.  (*Id.* ¶ 26.)  Plaintiff alleges that Donnatin requested plaintiff appear on a Saturday because Donnatin knew an ADA would not be available to evaluate and review the proposed charge against plaintiff.  (*Id.*)  Upon arrival at the Police Department on April 21, plaintiff was restrained, confined and charged with felony larceny in the third degree.  (*Id.* ¶ 27.)  Plaintiff again offered documentary and other evidence to assist Donnatin in evaluating the matter, but Donnatin told him the only way to avoid arrest, prosecution and public humiliation was to pay Kaytes Ford in full.  (*Id.* ¶ 28.)  Plaintiff alleges that Donnatin then forwarded the arrest information, stating that plaintiff had committed felony theft of services, to the media for general publication.  (*Id.* ¶¶ 29-30.)  Upon review of the charges, the DA's Office made a motion to dismiss all the charges against plaintiff as there was not sufficient information to believe a crime had been committed.  (*Id.* ¶ 32.)  On September 28, 2007, an order dismissing the charges against plaintiff was entered by Justice Peter D. Barlet, Town of Warwick.  (*Id.* ¶ 33.)

On April 11, 2008, defendant Donnatin served a subpoena duces tecum issued by his attorney on ADA Ferrara, commanding that he appear for a deposition on May 14, 2008 and that he produce "[a]ny and all documents relating to the conversations [he] had with P.O. Ron Donnatin with respect to the above referenced matter."  The DA's Office made a motion to quash the subpoena on April 30, 2008, on the grounds that the documents requested are filed under seal by operation of state law and that the request would violate the deliberative process privilege.

**DISCUSSION**

I.     <u>Legal Standard</u>

A party subject to a subpoena may bring a motion to quash the subpoena if it "requires disclosure of privileged or other protected matter, if no exception or waiver applies." FED. R. CIV. P. 45(c)(3)(A)(iii).   "'[T]he party invoking a privilege bears the burden of establishing its applicability to the case at hand.'"  *In re Cardinal Health, Inc. Sec. Litig.*, 2007 WL 495150, at *3 (S.D.N.Y. Jan. 26, 2007) (quoting *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d 379, 384 (2d Cir. 2003); alteration in original).  Motions to quash a subpoena are "entrusted to the sound discretion of the district court."  *In re Fitch, Inc.*, 330 F.3d 104, 108 (2d Cir. 2003) (internal quotation marks and citation omitted).


A.     <u>New York Sealing Statute</u>

The DA's Office argues that the documents requested are sealed by operation of New York Criminal Procedure Law § 160.50, and there is no authority authorizing their release.  (Letter from Andrew Kass, Senior ADA, Orange County District Attorney's Office, to Hon. William C. Conner, U.S.D.C., dated Apr. 30, 2008 ("Kass 4/30/08 Ltr.").)  New York Criminal Procedure Law § 160.50 provides for the sealing of records relating to the arrest and prosecution of an accused upon the termination of a criminal proceeding in his favor.  *See* N.Y. CRIM. PROC. LAW § 160.50(1).  The state sealing statute does not govern here, since the plaintiff is asserting federal claims.  *See Haus v. City of New York*, 2006 WL 3375395, at *2 (S.D.N.Y. Nov. 17, 2006) (citing inter alia *United States v. Goldberger & Dubin, P.C.*, 935 F.2d 501, 505 (2d Cir. 1991)).  However, in the spirit of comity, federal courts should take into consideration the policy interests embodied in state privileges and

4

related state laws limiting disclosure of confidential materials to the extent that they can be reconciled with federal policy interests and the discovery needs of federal civil rights litigants. *Id*.

The goal of the New York sealing statute is to ensure that a person charged but not convicted of an offense suffers no stigma as a result of having been the object of an unsustained accusation. *See Hynes v. Karassik*, 47 N.Y.2d 659, 662 (1979). However, New York courts have held that the privilege is waived when an acquitted defendant "commences a civil action and affirmatively places the information protected by CPL 160.50 into issue." *Kalogris v. Roberts*, 586 N.Y.S.2d 806, 807 (App. Div. 1992). "The privilege, which is intended to protect the accused, may not be used as a sword to gain advantage in a civil action." *Id*.

The issue of whether the documents are discoverable is properly before this Court. As a threshold matter, Donnatin is generally entitled to the documents requested, and they must be produced, subject to the additional rulings in this Order regarding the privilege asserted by the DA's Office. The documents are relevant as they relate to the conversation Donnatin had with the DA's Office before he charged plaintiff with a crime, an allegation that is asserted in the Amended Complaint.[1] The intended goal of the sealing statute is to protect the plaintiff in this instance, as he was the defendant in the state court proceeding; it is not meant to protect the ADA or the DA's Office. *See Hynes*, 47 N.Y.2d at 662. And plaintiff has put the documents in issue by asserting the civil rights claims in this action against defendants, therefore plaintiff has waived any privilege he

---

[1] The DA's Office argues that the subpoena is overly broad and does not identify or specify the nature of the conversations in question or identify any relevant dates of such identified conversations. The DA's Office has not given us any reason to believe, however, that the request involves documents that are so numerous and burdensome that they can not be identified. We do not think the request is overly broad. The subpoena asks for documents related to any conversations with Donnatin with respect to this matter, and is not a "fishing expedition." (Kass 4/30/08 Ltr. at 2.)

5

had under the sealing statute. See *Kalogris*, 586 N.Y.S.2d at 807; *Weir v. City of New York*, 2007 WL 528813, at *3 (S.D.N.Y. Feb. 15, 2007).

The DA's Office also argues that the issue of whether plaintiff waived the privilege in this instance should be decided by the New York courts. (Kass 4/30/08 Ltr. at 1-2.) However, this is not a matter of first impression. The New York courts have already ruled on the issue of waiver under the sealing statute, and courts in this Circuit have applied those rulings.. *See Weir*, 2007 WL 528813, at *3; *See Lehman v. Kornblau*, 206 F.R.D. 345, 348 (E.D.N.Y. 2001).

Waiver of the privilege, however, does not amount to an automatic unsealing of the record. To effect an unsealing of criminal records pursuant to § 160.50 in the context of discovery in a federal civil suit, the plaintiff can either apply to the state court to unseal the records, or can subpoena the District Attorney, or seek discovery if the District Attorney is a party to the proceeding. *See Lehman*, 206 F.R.D. at 348. Because defendant Donnatin has issued a subpoena on the DA's Office, he need not apply to the state court to unseal the records. However, since plaintiff did not request the release, we order that plaintiff provide defendant Donnatin with a signed and notarized release of his rights under New York Criminal Procedure Law Section 160.50. *See Weir*, 2007 WL 528813, at *3 (ordering the plaintiff provide the defendant with a signed and notarized release of his rights because the plaintiff waived his privilege under section 160.50 by placing the protected information in issue).

### B.    Deliberative Process Privilege

The DA's Office also argues that production of the requested documents would violate the deliberative process privilege. (Kass 4/30/08 Ltr. at 2.) It argues that documents related to the

6

discussions held at the outset of an investigation and made in relation to any decisions to file criminal charges constitute part of the deliberative process. (*Id*.) It also argues that disclosure of such documents would impede the DA's ability to effectively investigate and prosecute criminal matters by effectively eliminating all pre-arrest communications between ADAs and the investigating agencies. (*Id*.) Defendant Donnatin argues that the documents requested relate to the conversations ADA Ferrara had with Donnatin prior to the arrest of plaintiff, and are not protected because they do not relate to the DA's internal decision whether or not to prosecute. (Letter from Harold L. Moroknek, Hodges, Walsh & Slater, LLP, Attorneys for Defendant Donnatin, to Hon. William C. Conner, U.S.D.C., dated May 28, 2008 ("Moroknek Ltr.").).

"The government's deliberative process privilege protects the decisionmaking processes of the executive branch in order to safeguard the quality and integrity of governmental decisions. For the privilege to apply the document must be a predecisional." *A. Michael's Piano, Inc. v. FTC*, 18 F.3d 138, 147 (2d Cir. 1994) (internal quotation marks and citation omitted). The deliberative process privilege applies to "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Hopkins v. U.S. Dep't of Hous. & Urban Dev.*, 929 F.2d 81, 84-85 (2d Cir. 1991) (internal quotation marks and citation omitted); *MacNamara v. City of New York*, 2008 WL 858679, at *7-12 (S.D.N.Y. Apr. 1, 2008). A document does not qualify for the privilege if it reflects only the policy of the agency, rather than the personal opinions of the writer, or contains purely factual matters. *Adamowicz v. IRS*, 2008 WL 918699, at *5-6 (S.D.N.Y. Mar. 31, 2008).

We agree with the DA's Office that evidence regarding the basis or strategy of prosecutorial decisions or investigations can be privileged. *See Miller v. Mehltretter*, 478 F. Supp. 2d 415, 430

7

(W.D.N.Y. 2007).   However, the DA's Office has offered no description or detail about the documents it maintains are privileged.  If they wish to pursue this argument, we order that they serve and file a privilege log of the documents they claim should be protected pursuant to Local Civil Rule 26.2 for the U.S. District Courts for the Southern and Eastern Districts of New York.  In addition to the requirements of Rule 26.2, the log should also indicate the type of document, general subject matter, date and other information sufficient to identify the document.  Accompanying the log should be an explanation as to the basis for asserting the privilege with respect to each of the documents, and the DA's Office may also submit any declarations it feels are necessary.  The Court will then inform the DA's Office if the documents need to be submitted for in camera review.  *See Adamowicz*, 2008 WL 918699, at *6,12 (finding Government's affidavits not sufficiently detailed to allow for a decision as to privilege and ordering parties to submit supplementary declarations or documents for in camera review); *Lehman*, 206 F.R.D. at 348.  Defendant Donnatin may submit a response to the DA's log and any accompanying memorandum.  The Court will then "balance the parties' interests for and against disclosure of the privileged information." *Thompson v. Lynbrook Police Dept.*, 172 F.R.D. 23, 26 (E.D.N.Y. 1997) (deliberative privilege is not absolute and the court must consider various factors when a government agency asserts the privilege).

### C.     Defective Process

The DA's Office also argues that service was defective because the subpoena was served without a witness fee, and there was no indication that the defendant made a prior showing of indigency.  (Kass 4/30/08 Ltr. at 1.)  "Serving a subpoena requires delivering a copy to the named person and, if the subpoena requires that person's attendance, tendering the fees for 1 day's

8

attendance and the mileage allowed by law." FED. R. CIV. P. 45(b)(1).  Service is invalid where no

fee is tendered with the service of a subpoena requiring a witness's attendance.  *See Costomar*

*Shipping Co., Ltd. v. Kim-Sail, Ltd.*, 1995 WL 736907, at *3 (S.D.N.Y. Dec. 12, 1995).  Because the

subpoena requested ADA Ferrara appear for a deposition, a fee should have been tendered with the

service.  Defendant Donnatin has not submitted any proof that such a fee was tendered.  However,

in the interest of judicial economy, we have decided the substantive objections to the subpoena.  We

order that, before ADA Ferrara is required to appear for a deposition, defendant Donnatin pay the

fee pursuant to Rule 45.


## CONCLUSION

For all of the foregoing reasons, the Orange County District Attorney's Office's (the "DA's

Office") motion to quash the April 11, 2008 subpoena is denied.  Plaintiff is ordered to provide

defendant Donnatin with a signed and notarized release of his rights under New York Criminal

Procedure Law Section 160.50.  If the DA's Office wishes to invoke a privilege as to the requested

documents, it is ordered to submit a privilege log and any accompanying declarations and

memoranda by June 27, 2008.  Defendant Donnatin may respond to the log and any accompanying

documents by July 11, 2008. The DA's Office may reply by July 18, 2008. Defendant Donnatin is ordered to tender fees for the deposition of Assistant District Attorney Ferrara in accordance with FED. R. CIV. P. 45.


SO ORDERED.

Dated: White Plains, New York
       June 13, 2008


_William C. Conner_
Sr. United States District Judge

10